Werner KNOOP et al *v.* THE CITY OF LITTLE ROCK et al

82-196                                    638 S.W.2d 670

Supreme Court of Arkansas
Opinion delivered September 10, 1982

*Hardin, Grace, Downing, Napper, Allen & East,* for appellants.

*R. Jack Magruder, III,* City Atty., and *David Henry,* Asst. City Atty., for appellees.

*Henry & Duckett,* for intervenors Rogers Faust, Josh McHughes and George Wimberly.

FRANK HOLT, Justice. The issue presented here is the validity of Act 539 of 1981. Ark. Stat. Ann. § 19-704.1 et seq. (Supp. 1981). This act essentially has two operative provisions. It provides that in the 1982 general election cities having a population of 100,000 or more according to the most recent federal census and a city manager form of government must directly elect the mayor by a majority vote. Heretofore, in city manager governed cities (except Texarkana), the city directors were empowered to select the mayor from among themselves. The act further provides that each director in such cities would have to be elected by a majority vote, rather than a plurality, in the 1982 general election. To accomplish this the act provides for a runoff election, if necessary, to be held two weeks after the general election.

The appellants, residents and taxpayers of the city, filed suit alleging that Act 539 is unconstitutional as a violation of Amendment 14, Arkansas Constitution (1874), which prohibits local and special legislation. They asked that the act be invalidated and the city of Little Rock be enjoined from enforcing it. The chancellor ruled that the obvious purpose of the act, which requires the election of the board of directors and mayor by a popular majority vote, was to make the legislative body and the mayor more responsive to the voters inasmuch as the problems in larger cities are different and more complex than in smaller cities. Therefore, the chancellor held it was a reasonable and valid legislative action. The appellants contend that the chancellor erred in so holding.

We have had occasion to construe Amendment 14 numerous times, and the principles that govern whether an act is general, special or local are well settled. In *Laman, Mayor v. Harrill,* 233 Ark. 967, 349 S.W.2d 814 (1961), we said:

> A general law is one that operates upon all counties, cities and towns alike. A law is special in a constitu-

tional sense when by force of an inherent limitation it arbitrarily separates some person, place or thing from those upon which, but for such separation it would operate and a local law is one that applies to any subdivision or division of the state less than the whole.

There we also reiterated that in determining whether an act is general, local or special, we "look to its substance and practical operation" rather than to the form or phrasing of the act; otherwise, the prohibition against special and local legislation placed in the constitution by the people of Arkansas could easily be circumvented. In *Street Improvement Districts Nos. 481 and 485* v. *Hadfield*, 184 Ark. 598, 43 S.W.2d 62 (1931), we said:

> The general rule is that classification is properly based on population when reasonably adapted to the subject of the statute. Otherwise the classification by population is special legislation . . . .
>
> The authorities generally hold that classification of cities and towns by population can not be artibrarily adopted as a ground for granting some of them powers denied others if, although there be a difference in population, there is no difference in situation or circumstances of the municipalities placed in the different classes, and the difference in population has no reasonable relation to the purposes and object to be attained by the statute.

See also *Lovell* v. *Democratic Central Committee*, 230 Ark. 811, 327 S.W.2d 387 (1959).

Act 539 grants to cities having over 100,000 people and a city manager form of government two powers denied to cities with a city manager form of government and population less than 100,000,[1] namely, the power to directly elect

---

[1] It was stipulated that the following cities have a city manager form of government: Arkadelphia, 10,005; Brinkley, 4,909; Camden, 15,356; DeQueen, 4,594; Fayetteville, 36,608; Hope, 10,290; Little Rock, 158,461; Texarkana, 21,459.

their mayor in 1982 and the power to hold runoff elections two weeks after the general election in 1982 to insure that all directors, as well as the mayor, are elected by a majority vote. In other words, cities with a population below 100,000 may not directly elect their mayors or hold runoff elections to insure that all directors and mayors are elected by majority votes. Ark. Stat. Ann. §§ 19-704 and 19-708 (Repl. 1980). The act clearly grants to one city, Little Rock, powers in the election of its governing officials not granted to other cities with the same form of government. Further, we are unable to discern from the act and the evidence presented that there is any reasonable connection between a city having a population exceeding 100,000 and the desirability of the act's electoral provisions.

The appellee city and the appellee intervenors, residents and taxpayers of the city, argue, however, that the mayor in Little Rock has more control over the agenda because of the more numerous and complex issues faced by that city than a smaller size city. Zoning problems, airport problems and such are said to be problems of a sort that do not exist in a smaller city which results in the mayor of Little Rock having substantially more power than mayors in smaller cities. Furthermore, it is argued that the mayor in a large city is more distant or removed from the citizenry than the mayor in a small city.

The mayor in a city, regardless of its size, having a city manager form of government merely presides at board meetings, is recognized as head of the city government for ceremonial purposes, and signs all written agreements on behalf of the city. § 19-708 (b). These powers are not altered in any way by Act 539. They are the same whether the mayor is selected by the directors or by direct election with a majority vote. In the absence of some reasonable statutory difference in the powers or functions of the mayors of cities of different sizes, we cannot, although the act is accorded presumptive validity, find any reasonable basis for granting to one city but not others the power of directly electing its mayor and holding runoff elections for the positions of

mayor and city directors two weeks after the general election. Consequently, we must hold that Act 539 is special legislation which contravenes Amendment 14. We deem it unnecessary to discuss appellants' additional argument that the act is local legislation.

We do not hold, however, that the general assembly may never draw population classifications that treat cities differently when the purpose of the act is based on a reasonable and sound basis due to substantial differences and needs. *Knowlton* v. *Walton,* 189 Ark. 901, 75 S.W.2d 811 (1934); and *Lovell* v. *Democratic Central Committee, supra.*

Reversed and remanded with directions that the injunction be issued.

ADKISSON, C.J., dissents.