The Honorable Stuart Vess State Representative 6717 Pontiac Drive North Little Rock, Arkansas 72116-5232
Dear Representative Vess:
This official Attorney General opinion is rendered in response to your recent questions regarding the municipal judges' and clerks' retirement fund in North Little Rock.
You note in your correspondence that Act 19 of 1965 created the municipal judges' and clerks' retirement fund, which is supported by income from court costs. Act 330 of 1987 created the additional requirement that "cities having a population of more than 60,000, but less than 70,000 persons according to the 1980 Federal Decennial Census" pay the cost of health insurance for retired members from the retirement fund created by Act 19 of 1965.
You point out that the City of North Little Rock has complied with the requirements of Act 330 by paying all benefits mandated by law, but that because of a significant increase in the number of beneficiaries and benefits provided, the retirement fund will become insolvent during the month of May, 1997. You also indicate that, pursuant to the provisions of A.C.A. § 24-8-403(b)(1)(B)(i), the fund will look to the city's general fund to make up the deficiency.[1] According to your calculations, the city will, on a monthly basis, have to carry almost 80% of the total obligations currently imposed by law.
Finally, you note that the City of North Little Rock is the only city in Arkansas falling within the population classification of Act 330 of 1987 (i.e., having a population of more than 60,000, but less than 70,000 persons according to the 1980 Federal Decennial Census), and thus is the only city subject to the provisions of Act 330.
In light of the above-described scenario, you have presented the following questions:
 (1) Does Act 330 of 1987 remain a valid obligation imposed upon the City of North Little Rock, even though the retirement fund has become insolvent, and the city will be required to carry the bulk of the obligation of the fund?
 (2) Is Act 330 of 1987 "special legislation," and therefore unconstitutional?
RESPONSE
Question 1 — Does Act 330 of 1987 remain a valid obligation imposed uponthe City of North Little Rock, even though the retirement fund has becomeinsolvent, and the city will be required to carry the bulk of theobligation of the fund?
It is my opinion that the insolvency of the fund does not affect the obligation created by Act 330 of 1987. However, as noted in response to Question 2, that obligation could be affected by a challenge to the validity of the Act on constitutional grounds. Nevertheless, until such a challenge is successfully carried out, the obligation created by Act 330 continues to be valid.
Various factors point to my conclusion that the insolvency of the fund does not affect the continuing nature of the obligation under Act 330. Nothing in the language of the Act indicates that the validity of the Act ceases when the funds governed by the Act become insolvent. Indeed, the language of the Act explicitly states: [T]his Act . . . shall be in full force and effect from and after its passage and approval." (The Act was approved on March 19, 1987.) Moreover, no subsequent acts have repealed or superseded Act 330.
In addition, the fact that the law explicitly provides a mechanism whereby the city can continue to pay the benefit obligations of the fund, despite its insolvency, is an indication of a legislative intent that the obligations of the fund not be affected by the fund's insolvency. See A.C.A. § 24-8-403(b)(1)(B)(i). It is also notable that the statute specifically notes that the fund can continue to accrue even after it is insolvent, to the point that it may become solvent again, in which case reliance on other sources will be unnecessary. Id.
For these reasons, I conclude that the insolvency of the fund does not affect the obligation created by Act 330 of 1987, and until that Act is successfully challenged on other grounds, the requirement created by the Act continues to be a legal obligation of the city.
Question 2 — Is Act 330 of 1987 "special legislation," and thereforeunconstitutional?
It is my opinion that if this question were presented to a court, Act 330 of 1987 might well be stricken down as impermissible special legislation.
Amendment 14 of the Arkansas Constitution prohibits "special legislation", stating:
 The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts.
ARK. CONST., am. 14.
The Arkansas Supreme Court has held that legislation is "special" if "by some inherent limitation or classification it arbitrarily separates some person, place, or thing from those upon which, but for such separation, it would operate, and the legislation is local if it applies to any division or subdivision of the state less than the whole." Owen v. Dalton,296 Ark. 351, 354, 757 S.W.2d 921 (1988). A determination of whether legislation creates an "arbitrary" distinction (thus rendering the legislation impermissible) is made by an application of the "rational basis" test. That is, the legislation is impermissibly "special" if the distinction or classification that it creates bears no rational relation to the purpose of the law. Streight v. Ragland, 280 Ark. 206,655 S.W.2d 459 (1983).
In this regard, the court has stated:
 An act is not local or special simply because it is limited to a class consisting of less than all citizens of the state or less than all of its territory. However, generality ends and specialty begins where the class established by the act has no reasonable relation to the purpose or subject matter of the enactment or omits from its operation persons or areas which would fall naturally into the class to which the act is limited.
Littleton v. Blanton, 281 Ark. 395, 398-99, 665 S.W. 2d 239 (1984).
The court has also specifically stricken down classifications based upon population in instances where the stated population had nothing to do with the subject matter of the law. See, e.g., Owen v. Dalton, 296 Ark. 351,354, 757 S.W.2d 921 (1988); Knoop v. City of Little Rock, 277 Ark. 13,638 S.W.2d 670 (1982); Board of Trustees, University of Ark. v. PulaskiCounty, 229 Ark. 370, 315 S.W.2d 879 (1958); Hensley v. Holder,228 Ark. 401, 307 S.W.2d 794 (1957). However, classifications based upon population are not inherently invalid, and can be upheld if they bear a rational relation to the purpose of the law. See, e.g., Lovell v.Democratic Central Committee of Pulaski County, 230 Ark. 811,327 S.W.2d 387 (1959); Murphy v. Cook, 202 Ark. 1069, 155 S.W.2d 330 (1941).
The court has set forth the following guidelines for evaluating classifications based on population, for purposes of determining the applicability of Amendment 14:
 The general rule is that classification is properly based on population when reasonably adapted to the subject of the statute. Otherwise the classification by population is special legislation. . . . The authorities generally hold that classification of cities and towns by population can not be arbitrarily adopted as a ground for granting some of them powers denied others if, although there be a difference in population, there is no difference in situation or circumstances of the municipalities placed in the different classes, and the difference in population has no reasonable relation to the purposes and object to be attained by the statute.
Knoop, 277 Ark. at 15.
Although the question of whether particular legislation has a rational basis is largely a question of law, the Arkansas Supreme Court has indicated in dicta that it will look to the evidence presented in each case to determine whether a rational basis exists. Knoop v. City ofLittle Rock, 277 Ark. 13, 638 S.W.2d 670 (1982) (stating that "we are unable to discern from the act and the evidence presented that there is any reasonable connection between a city having a population exceeding 100,000 and the desirability of the act's . . . provisions."). Id. at 16. It should also be noted that statutes are "presumed to be framed in accordance with the Constitution, and should not be held invalid for repugnance thereto unless such conflict is clear and unmistakable." Boardof Trustees of Municipal Judges and Clerks Fund, City of Little Rock v.Beard, 273 Ark. 423, 620 S.W.2d 295 (1981).
Under the limited facts that are available to me in evaluating Act 330 of 1987, I have concluded from the face of the Act that the population-based classification it creates appears to be impermissible. The language of the Act provides no specific enlightenment as to the legislature's purpose in creating a population-based classification.[2] Nevertheless, even assuming that the legislature had a valid reason for concluding (for whatever reason) that cities having a population specifically between 60,000 and 70,000 should pay the costs of health insurance for their employees, there appears to be no reason for the legislature to have limited this requirement to cities which were found to have that population in 1980 only, and not to include cities that later attained that level of population.
For this reason, I conclude that if the question of Act 330's constitutionality were presented to a court, the Act could be stricken down as a violation of Amendment 14 of the Arkansas Constitution.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] It should be noted that Act 1256 of 1995, §§ 11 and 13 created the "city administration of justice fund" in the office of the city treasurer of each municipality which operates a police, city, or municipal court, for the purpose of defraying the expenses of various programs, including the municipal court judges' and clerks' retirement fund. See A.C.A. §16-10-308.
[2] The emergency clause of Act 330 of 1987 states: "It is hereby found and determined by the General Assembly that health insurance coverage for the judges and clerks of municipal courts located in cities having a population of more than 60,000 but less than 70,000 persons according to the 1980 Federal Decennial Census should continue after their retirement; that the cost of such coverage should be paid from the retirement fund for the judges and clerks of municipal courts; that this Act so provides and should become effective immediately in order to adequately provide for such retired officials. Therefore, an emergency is hereby declared to exist and this Act being immediately necessary for the preservation of the public peace, health and safety shall be in full force and effect from and after its passage and approval." Acts 1987, No. 330, § 3.