Sybil LOONEY, Executrix of the Estate of Carol Chamberlain, Deceased *v*. Dr. Michael BOLT, Dr. Munir M. Zufari, and Health Management, Inc., D/B/A Crawford Memorial Hospital

96-1504                                        955 S.W.2d 509

Supreme Court of Arkansas
Opinion delivered November 13, 1997

*H. Ray Hodnett* and *Eddie N. Christian, Jr.*, for appellant.

*Ledbetter, Hornberger, Cogbill, Arnold & Harrison*, by: *E. Diane Graham* and *J. Michael Cogbill*, for appellee Munir Zufari, M.D.

TOM GLAZE, Justice. This case represents another of a series of cases involving a medical injury which resulted in death and and the question as to whether the wrongful-death cause of action is controlled by the Medical Malpractice Act. Carol Chamberlain underwent surgery at the Crawford Memorial Hospital on September 25, 1991, which was allegedly undertaken by Dr. Michael Bolt and Dr. Munir Zufari without her informed consent and without her knowledge of alternatives available for her condition other than surgery. Chamberlain died on November 16, 1991, but Sybil Looney, executrix of Chamberlain's estate, did not file suit against Dr. Zufari, Dr. Bolt, and the hospital until December 2, 1993 — more than two years after Chamberlain's surgery and the alleged malpractice.

The trial court dismissed all of the estate's claims based on summary-judgment motions. However, the Chamberlain estate brings this appeal from the lower court's dismissal with prejudice against Zufari. The trial court's reason for dismissing the estate's suit against Zufari was that the estate's cause of action is for wrongful death caused by medical injury and that Ark. Code Ann. § 16-114-203 (Supp. 1995) of the Medical Malpractice Act requires all acts for medical injury to be commenced within two years after the action accrues. Because the estate's suit was filed after two years had expired, the trial court ruled the estate's claim was procedurally barred.

██ In its argument for reversal, the Chamberlain estate concedes this court, albeit in split decisions, has held that the Medical Malpractice Act applies to all causes of action for medical injuries accruing after April 2, 1979, and, as to such causes of action, the Act shall supersede any inconsistent provision of law. The estate further acknowledges that this court has specifically held that the Medical Malpractice Act's two-year limitations period conflicts with the three-year limitations period provided under the Wrongful Death Act and is therefore controlling where death ensues from medical injuries. *See Hertlein v. St. Paul Fire Ins. Co.*, 323 Ark. 283, 914 S.W.2d 303 (1996) (court in 4-3 decision

where death ensued from February 2, 1992 medical injury, dismissed claim not filed until May 1994); *Pastchol v. St. Paul Fire & Marine Co.*, 326 Ark. 140, 929 S.W.2d 713 (1996) (court, in a 5-2 decision where plaintiff filed wrongful-death action alleged from a medical injury on August 26, 1991, dismissed because belated complaint filed on September 7, 1993); *Morrison v. Jennings*, 328 Ark. 278, 943 S.W.2d 559 (1997) (court, in a 4-3 decision where alleged malpractice injury occurred on April 28, 1992, dismissed suit because complaint filed on July 11, 1994); *Scarlett v. Rose Care, Inc.*, 328 Ark. 672, 944 S.W.2d 545 (1997) (court, in a 5-2 decision where medical injury alleged on May 10, 1993, was dismissed as barred because complaint filed on June 11, 1996); *see also Ruffins v. ER Arkansas, P.A.*, 313 Ark. 175, 853 S.W.2d 877 (1993).

While the estate voices passing disagreement with this court's foregoing holdings, it states that it does not ask us to overrule those decisions. Instead, the estate contends that, because Ms. Chamberlain's medical injury occurred on September 25, 1991, and before any of the foregoing decisions, those holdings should not be retroactively applied to bar her claim. The estate submits that, at the time her claim accrued, reasonable doubt existed concerning whether the three-year wrongful-death statute or the two-year medical malpractice statute of limitations applied. Because Arkansas law generally favors applying the longer statutory period in these circumstances, the estate argues its entitlement to the three-year limitations period. *See Dunlap v. McCarthy*, 284 Ark. 5, 678 S.W.2d 361 (1984).

■ To support the estate's argument that this court's foregoing decisions should not apply to her injury, the estate cites *Chevron Oil Company v. Huson*, 404 U.S. 97 (1971), where the Supreme Court considered three factors when deciding whether a decision should be applied prospectively or retroactively. However, Arkansas has its own settled law on this subject, and this court considered that law in *Baker v. Milam*, 321 Ark. 234, 900 S.W.2d 209 (1995). *See also Flemens v. Harris*, 323 Ark. 421, 915 S.W.2d 685 (1996); *Wiles v. Wiles*, 289 Ark. 340, 711 S.W.2d 789 (1986); *Taliaferro v. Barnett*, 47 Ark. 359 (1886). In *Baker*, the court discussed its June 9, 1992 decision in *Weidrick v. Arnold*, 310 Ark. 138, 835 S.W.2d 843 (1992), where the court overruled *Jack-*

*son v. Ozment*, 283 Ark. 100, 671 S.W.2d 736 (1984), holding the sixty-day notice provision (and ninety-day extension of limitations provision) of the Medical Malpractice Act were invalid because the sixty-day provision conflicted with Ark. R. Civ. P. 3. Baker argued her injury accrued before the *Weidrick* decision, and she was entitled to rely on the sixty-day notice provision and correlating ninety-day extension period because prior decisions had validated that law. The court rejected Baker's argument because *Weidrick* had been decided when Baker filed her medical-injury action. The *Baker* court, citing *Wiles*, further relied on the principle that this court has long held that a decision of this court, when overruled, stands as though it had never been. *See Wiles*, 289 at 342.

The estate attempts to distinguish its situation from *Baker* and points out that the three-year wrongful-death limitations statute was not ruled in conflict with the two-year malpractice limitations period until *Hertlein* was decided on February 5, 1996, or *after* the estate filed its claim in decedent-Chamberlain's behalf. The estate further argues it justifiably relied on this court's earlier decision in *Brown v. St. Paul Mercury Ins. Co.*, 292 Ark. 558, 732 S.W.2d 130 (1987) (*Brown I*), where the court indicated Brown's death was due to a medical injury, and as a consequence, the wrongful-death three-year statute of limitations applied. We reject the estate's argument for two reasons.

First, we point out that the *Brown I* case was overruled in 1991 by *Bailey v. Rose Care Ctr.*, 307 Ark. 14, 817 S.W.2d 412 (1991). Moreover, when *Brown v. St. Paul Mercury Ins. Co.*, 308 Ark. 361, 823 S.W.2d 908 (1992) (*Brown III*), was decided on February 8, 1992, a caveat was issued by concurring opinion to the bench and bar underscoring that this court had not, as yet, decided whether the Medical Malpractice Act provisions applied in a case where a death results from a medical injury; it cautioned that it would be prudent to assume those provisions did apply. In sum, the earlier *Brown I* and *Brown III* cases offered the Chamberlain estate no precedent or comfort that the three-year wrongful-death limitations period applied to the estate's case when it filed its action on December 2, 1993.

Second, we underscore that this court's decision in *Ruffins v. ER Arkansas, P.A., supra,* was decided on May 17, 1993, and that holding, and the language contained therein, offered sufficient reasons for the Chamberlain estate to believe the two-year limitations statute would govern Ms. Chamberlain's wrongful-death case. We acknowledge the estate's contention that the language in *Ruffins* is overbroad and is not controlling of the estate's case. In this respect, the estate submits that, while the *Ruffins* decision held the sixty-day notice provision of the Medical Malpractice Act governed all causes of action for medical injuries, it argues the holding in *Ruffins* did not actually specify that two-year limitations provision of the Act would control medical injuries where a death ensued. The estate also mentions that *Ruffins* was a 4-3 decision which, in itself, was reason for the estate to believe some doubt remained, concerning whether the two-year limitations period might apply to the estate's wrongful-death action. We see no merit in the estate's contentions.

■ The *Ruffins* court framed the issue covered there very broadly, saying, "Our case law has reserved ruling on the issue of whether actions for wrongful death resulting from medical malpractice cases are subject to the Medical Malpractice Act." *Ruffins*, 313 Ark. at 180. Clearly this language undercuts any notion the Chamberlain estate may have had that *Brown I* was any precedent for the proposition that the three-year wrongful-death limitation applied when medical injuries were involved. The court then held as follows:

> The Medical Malpractice Act provides that it applies to "*all causes of action for medical injury.*" The language is clear, and we are constrained to follow it. Accordingly, we hold that, under the then existing law, notice had to be given in compliance with the Medical Malpractice Act.

■ ■ While only the notice provision was specifically brought into issue in *Ruffins*, the court, as a prerequisite, was compelled to decide the threshold issue that the Medical Malpractice Act governs all causes of action involving medical injuries, including those resulting in wrongful death. In sum, we fail to see any justifiable reliance on the estate's part for it to assume the three-

year limitations of the Wrongful Death Act would apply to its case. Nor are we aware of any reason to divert from our recent decisions that have consistently applied the Medical Malpractice Act retroactively to all causes of actions for medical injuries arising after April 2, 1979 — the date of the Act's passage.[1]

■ The Chamberlain estate lastly argues that the Medical Malpractice Act, particularly the two-year limitations provision, is unconstitutional because it denies a person's right to equal protection, due process, redress for wrongdoing, privileges and immunities, and violates Arkansas's constitutional prohibition against special legislation. These same constitutional challenges were raised in *Morrison v. Jennings, supra,* and like the plaintiff in *Morrison,* the estate here did not obtain a clear ruling from the trial court concerning those constitutional claims. *See Morrison,* 328 Ark. at 283-284. Instead, the trial court merely stated in its order granting Dr. Zufari's summary judgment motion "that the Medical Malpractice Act is constitutional." Because the trial court's ruling does not sufficiently address the estate's constitutional claims, a review of those issues is precluded. *Id.*

In addition, the estate offers almost no legal citation of authority to support its arguments except to reference the constitutional provisions themselves.[2] In other words, the estate offers no sound legal authority or convincing argument to support its multi-faceted constitutional claims. The estate does cite *Gay v. Rabon,* 280 Ark. 5, 652 S.W.2d 836 (1983), but that decision seems contrary to its constitutional arguments. There, this court considered the sixty-day notice provision against equal protection, due process, and special legislation claims. The *Gay* court concluded the vital question was one of reasonableness, and found no infringement upon the various constitutional provisions. The court held the legislature was not in error in determining that

---

[1] This court has consistently applied the *Ruffins* decision retroactively to prior alleged medical injuries in the *Hertlein, Pastchol,* and *Morrison* cases.

[2] Regarding its special legislation argument, the estate does refer to *Knoop v. The City of Little Rock,* 277 Ark. 13, 638 S.W.2d 670 (1982), but mentions only generally the definitional statement, "a law is special in a constitutional sense when by force of an inherent limitation it arbitrarily separates some person, place, or thing from those upon which, but for such separation it would operate . . . ."

medical malpractice insurance rates were increasing and placing a heavy burden of medical expense on those who could least afford it. The court further stated the sixty-day notice requirement made it possible for the insurance carrier and the potential defendant to attempt to arrive at a settlement with the aggrieved person without the necessity of the parties incurring the expense of litigation. *Id*. at 8-9. In other words, the *Gay* court held that the Medical Malpractice Act was not arbitrary and capricious, but instead, the Act's provisions were reasonably related to the legislative goal of reducing medical malpractice insurance costs.[3]

■ Because no clear ruling was obtained on the estate's constitutional arguments or sound legal authority and convincing argument presented, we affirm on these constitutional points.

Affirmed.

NEWBERN, BROWN, and THORNTON, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. Sybil Looney filed her complaint more than two years from the date on which the appellees allegedly caused Carol Chamberlain's medical injury but within three years of Ms. Chamberlain's death. In the fall of 1991, when Ms. Looney's cause of action accrued, her claim for wrongful death was subject to the three-year statute of limitations contained in the Wrongful Death Act, Ark. Code Ann. § 16-62-102(c)(Supp. 1995). Prior to the accrual of Ms. Looney's cause of action, we had held in *Brown v. St. Paul Mercury Ins. Co.,* 292 Ark. 558, 732 S.W.2d 130 (1987)("*Brown I*"), that the three-year statute governed claims for wrongful death resulting from medical injury and that such claims did not have to be filed within the two-year statute contained in the Medical Malpractice Act, Ark. Code Ann. § 16-114-203 (Supp. 1995). We said the Medical Malpractice Act's two-year statute was "irrelevant" to wrongful-death claims, and we reached this conclusion even though the

---

[3] We note that the estate offers argument to distinguish *Gay* by stating the entire Medical Malpractice Act is unconstitutional because its goal can no longer be met since the sixty-day notice provision of the Act was invalidated in *Weidrick*. Again, the estate, except to reference a dissenting opinion, offers no legal authority to support its argument, challenging the Act.

Medical Malpractice Act provided that it applied to "all causes of action for medical injury occurring after April 2, 1979, and, as to such causes of action, shall supersede any inconsistent provision of law." Ark. Code An. § 16-114-202.

Between the time of our decision in *Brown I* and the accrual of Ms. Looney's cause of action, we never questioned our holding that the three-year statute of limitations governed actions for wrongful death resulting from medical injury. The three-year statute was clearly in effect in the fall of 1991 when Ms. Looney's action accrued, and Ms. Looney complied with the statute by filing her complaint on December 2, 1993.

Although it is undisputed that Ms. Looney filed her claim in accordance with the law as it existed when her cause of action arose, the majority believes the claim was properly dismissed as untimely because it was filed more than two years from the date on which the appellees allegedly caused Ms. Chamberlain's medical injury. The Court in *Brown I* had held that the two-year statute was *not* applicable to the type of claim filed by Ms. Looney, and *Brown I* was the controlling law at the time Ms. Looney's claim arose. However, according to the majority, following our decision in *Brown I,* we rendered three decisions after Ms. Looney's cause of action had accrued but before her complaint was filed that repudiated *Brown I* and established the applicability of the two-year statute to claims for wrongful death resulting from a medical injury. In the wake of these decisions, the majority says, *Brown I* stood "as though it had never been," and it was therefore unreasonable for Ms. Looney to rely on that case in waiting more than two years from the date of Ms. Chamberlain's surgery to file suit against the appellees.

The majority's reasoning is flawed in several respects. First, the majority errs by suggesting that the statute of limitations in effect when Ms. Looney's claim was *filed* on December 2, 1993, is controlling. As many jurisdictions have recognized, "[t]he statute of limitation in effect when a cause of action accrues governs the time within which a civil action must be commenced." *Rauschenberger v. Radetsky,* 745 P.2d 640, 642 (Colo. 1987). *See also Chase v. Sabin,* 516 N.W.2d 60, 61 n.2 (Mich. 1994)("The perti-

nent statute of limitations is the one in effect when the plaintiff's cause of action arose."), *citing Winfrey v. Farhat*, 170 N.W.2d 34 (Mich. 1969). *See Matter of Estate of Weidman*, 476 N.W.2d 357, 364 (Iowa 1991); *Department of Health & Welfare v. Engelbert*, 753 P.2d 825, 826 (Idaho 1988); *Cavanaugh v. Abbot Laboratories*, 496 A.2d 154, 158 (Vt. 1985); *Dade County v. Rohr Industries, Inc.*, 826 F.2d 983, 989 (11th Cir. 1987); *Canadian Indem. Co. v. K & T, Inc.*, 745 F. Supp. 661, 663 (D.Utah 1990); *Cooper v. Summer*, 672 F. Supp. 1361, 1364–65 (D.Nev. 1987). As mentioned, the statute of limitations in effect when Ms. Looney's wrongful-death action accrued was the three-year statute contained in the Wrongful Death Act. Ms. Looney complied with that statute, and it is irrelevant whether her claim was timely under any conflicting limitations provision in effect on December 2, 1993.

The majority suggests that *Baker v. Milam*, 321 Ark. 234, 900 S.W.2d 209 (1995), supports the application of the statute of limitations in effect when Ms. Looney filed her complaint on December 2, 1993. In the *Baker* case, the issue was whether the Trial Court was correct to apply retroactively our decisions in *Weidrick v. Arnold*, 310 Ark. 138, 835 S.W.2d 843 (1992), and *Thompson v. Dunn*, 319 Ark. 6, 889 S.W.2d 31 (1994), which, respectively, invalidated the notice and 90-day-extension provisions contained in Ark. Code Ann. § 16-114-204 (1987). As the majority observes, the *Weidrick* case had been decided at the time Ms. Baker filed her complaint. Ms. Baker asserted that *Weidrick* and *Thompson* should not have been applied retroactively to bar her claim because her cause of action had accrued prior to the date of these decisions.

With very little discussion, we rejected Ms. Baker's argument and upheld the retroactive application of *Weidrick* and *Thompson* to her claim. We noted that those cases "had been decided when the trial court entered its decision in this case," we referred to a supposed "long-standing practice of applying our decisions retrospectively," and we said that Ms. Baker had not demonstrated any "justifiable reliance" on an "old rule of law." *Baker v. Milam*, 321 Ark. at 238, 900 S.W.2d at 211. We further intimated that, in other cases, we had applied the *Weidrick* case to actions that had accrued prior to the date of that decision. We emphasized that the

Trial Court had "correctly applied the decisional law of this court as it existed when it decided appellant's case." *Id.*

It was wrong for us to suggest that the Trial Court's retroactive application of *Weidrick* and *Thompson* was correct simply because those cases were in effect at the time the Trial Court rendered its decision. Although the *Weidrick* case was on the books when Ms. Baker filed her claim, we did not adopt a clear rule that the statute of limitations in effect at the time a complaint is filed, rather than the statute in effect when the cause of action accrues, is controlling. If the *Baker* decision is to be so interpreted, it should be unceremoniously and immediately overruled.

The majority suggests that the *Baker* case "relied on the principle that this court has long held that a decision of this court, when overruled, stands as though it had never been." Although we did not refer to this "principle" in the *Baker* case, we have recited it in other cases, often in conjunction with a statement that our "long-standing practice" is to apply our decisions retroactively. We do, of course, apply our decisions retroactively when they are declarations of what the law has always been rather than decisions that overrule or change the law. One need only review our most recent decisions to see that, when our decisions establish new rules of law, we apply them prospectively only. *See, e.g., Union Pacific R.R. Co. v. Sharp,* 330 Ark. 174, 952 S.W.2d 658 (1997); *Shannon v. Wilson,* 329 Ark. 143, 947 S.W.2d 349 (1997); *Wiles v. Webb,* 329 Ark. 108, 946 S.W.2d 685 (1997).

We have "acknowledged the need, when overruling prior case law, to recognize the validity of actions taken in faith upon old decisions while stating the rules to be followed in the future." *Wiles v. Wiles,* 289 Ark. 340, 342, 711 S.W.2d 789, 791 (1986). Clearly, where a party has demonstrated reliance on an overruled case, we have not treated the case as if it never existed. *See also Crisco v. Murdock Acceptance Corp.,* 222 Ark. 127, 136, 258 S.W.2d 551, 557 (1953)("Even though such retroactive judicial pronouncements are permitted by the constitution, they are manifestly contrary to a sense of fair play.")(supp. op. den. reh'g); *Oliver v. State,* 323 Ark. 743, 749, 918 S.W.2d 690, 692 (1996)("We conclude that fairness dictates a prospective applica-

tion of our holding. Oliver could justifiably have relied on the cases now overruled.").

Our approach to this issue is, and should be, thus largely consistent with that of the United States Supreme Court as expressed in *Chevron Oil v. Huson,* 404 U.S. 97 (1971). A decision should be applied prospectively if, among other things, it establishes "a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed," or if a retroactive application of the decision will "produce substantial inequitable results" or "injustice or hardship." *Id.* at 106-07 (citations omitted). The majority shrugs off the *Chevron Oil* case, but we have followed it in at least two previous decisions. *See, e.g., Pledger v. Bosnick,* 306 Ark. 45, 811 S.W.2d 286 (1991); *American Trucking Ass'ns, Inc. v. Gray,* 295 Ark. 43, 746 S.W.2d 377 (1988).

In any event, the notion that "an overruled case is to be treated as if it never was the law" is clearly outmoded; the more modern view is that this principle should be rejected as a "myth." Annotation, *Prospective or Retroactive Operation of Overruling Decision,* 10 A.L.R.3d 1371, 1383 (1966). *See also Chevron Oil v. Huson,* 404 U.S. at 107 ("We should not indulge in the fiction that the law now announced has always been the law and, therefore, that those who did not avail themselves of it waived their rights.")(citation omitted).

The second flaw in the majority's reasoning is its conclusion that three of our cases decided prior to the filing of Ms. Looney's claim on December 2, 1993, overruled *Brown I* and established the applicability of the two-year statute over the three-year statute. Even if the majority is correct in its suggestion that the controlling statute of limitations is the one in effect when Ms. Looney filed her claim on December 2, 1993, it is clear that the law in effect at that time was still the three-year statute.

The majority contends that *Bailey v. Rose Care Center,* 307 Ark. 14, 817 S.W.2d 412 (1991); *Brown v. St. Paul Mercury Ins. Co.,* 308 Ark. 361, 823 S.W.2d 908 (1992)("*Brown III*"); and *Ruffins v. ER Arkansas, P.A.,* 313 Ark. 175, 853 S.W.2d 877 (1993), reversed *Brown I* and rendered applicable the two-year provision.

These cases could not have had the effect attributed to them by the majority. The *Bailey* case overruled our holding in *Brown I* that the injury sustained by the deceased was a "medical injury" within the meaning of the Medical Malpractice Act, but it did not discuss, let alone disturb, our holding in *Brown I* that the three-year limitations provision applied to actions for wrongful death resulting from medical injury.

In *Brown III,* we again said that an action for wrongful death resulting from a medical injury was governed by neither the notice provision nor the two-year statute of limitations contained in the Medical Malpractice Act. We emphasized that, "[b]ecause this is a wrongful death action, compliance with the medical malpractice statutes . . . is irrelevant." *Brown v. St. Paul Mercury Ins. Co.,* 308 Ark. at 363, 823 S.W.2d at 909. In a concurring opinion, Justice Glaze observed that the question of the Medical Malpractice Act's applicability to actions for wrongful death resulting from a medical injury had not been "fully developed and argued in this appeal." *Id.* at 364, 823 S.W.2d at 910 (Glaze, J., concurring). The concurring opinion cautioned attorneys to assume that the Medical Malpractice Act, and the notice provisions in particular, would in fact apply to such actions. The question, however, is whether *Brown III* overruled *Brown I* and established the applicability of the two-year statute. Whatever the efficacy of the "caveat" issued in the concurring opinion, the holding in *Brown III* unquestionably maintained the *status quo* established in *Brown I* and did nothing to suggest that the three-year statute was no longer applicable to actions for wrongful death resulting from a medical injury.

Likewise, nothing in the *Ruffins* case altered the rule established in *Brown I* that the three-year statute applied to the type of claim brought by Ms. Looney. To the extent that the *Ruffins* case could be viewed as changing the applicable statute of limitations from the three-year provision to the two-year provision, under the *Chevron Oil, Wiles,* and *Crisco* cases, the decision should not be applied retroactively to bar Ms. Looney's claim. The majority asserts that we have applied *Ruffins* retroactively in past cases. Even if that assertion is true, it provides no basis for applying the case retroactively here in view of the fact that our decisions in the

cases cited by the majority do not reflect that the plaintiffs urged a prospective-only application of the case.

If the controlling statute of limitations were the one in effect at the time a claim is filed, here is what could happen. A claimant whose claim arises when a three-year statute of limitations is in effect thinks she has three years within which to file it. She may wish to delay filing her complaint for a variety of reasons, for example, to allow time to ascertain the extent of her injury. More than two years after the claim arose, the General Assembly by statute, or this Court by decision, changes the law to say a two-year limitation applies. The claim is barred. Nothing could be more unfair, and that is why the other jurisdictions cited above hold that the limitations period in effect at the time the claim arose applies. The only fair rule is simply this — if a decision changes the law it should be applied prospectively; if not, it should be applied retroactively.

The Court will likely remain divided on the issue of whether the two-year statute or the three-year statute should apply to actions for wrongful death resulting from medical injury. Despite the division on that issue, we should all agree, at the very least, that the timeliness of a plaintiff's cause of action should be determined with reference to the law as it existed when the cause of action accrued. We should not penalize Ms. Looney for changes in the law that she could not have foreseen. Because Ms. Looney complied with the law existing when her cause of action arose, as well as the law existing when her claim was filed, we should allow her to pursue her claim.

I respectfully dissent.

THORNTON, J., joins in this dissent.

ROBERT L. BROWN, Justice, dissenting. I continue in my belief that Ruffins v. ER Arkansas, P.A., 313 Ark. 175, 853 S.W.2d 877 (1993), did not decide the statute-of-limitations question at issue in the instant case. That issue was not squarely addressed by this court until Hertlein v. St. Paul Fire Ins. Co., 323 Ark. 283, 914 S.W.2d 303 (1996). In any case, I respectfully dissent for the reasons stated in my dissenting opinion in Morrison v.

*Jennings*, 328 Ark. 278, 943 S.W.2d 559 (1997) (J. Brown, dissenting).