Prince JOHNSON *v.* STATE of Arkansas

CR 91-173                                823 S.W.2d 440

CR 91-214

Supreme Court of Arkansas
Opinion delivered January 13, 1992

526

*William R. Simpson, Jr.*, Public Defender, *Thomas B. Devine III*, Deputy Public Defender, by: *Didi H. Sallings* and *Brett Qualls*, Asst. Public Defenders, for appellant.

*Winston Bryant*, Att'y Gen., by: *Melissa K. Rust* and *Teena L. White*, Asst. Att'ys Gen., for appellee.

STEELE HAYS, Justice. In late April 1990, Little Rock and Pulaski County experienced several aggravated robberies. On April 26 a county liquor store was robbed and two clerks were murdered. Appellant Prince Johnson, sixteen years of age, was charged with two counts of aggravated robbery committed on April 22, 1990, and with two counts of capital murder committed on April 26, 1990. He was tried and convicted in separate trials.

Appellant has appealed from the judgments of conviction and the two appeals are consolidated because they present an issue common to both: whether inculpatory statements Johnson made to police officers should have been suppressed. A second point of error concerns the trial court's denial of a motion to transfer the aggravated robbery counts to Juvenile Division.

## I

Appellant challenges the denial of his motion to suppress on three grounds: 1) The police initiated questioning after appellant had asserted his right to remain silent; 2) appellant was not brought before a judicial officer in a timely fashion; and 3) the statements were involuntary under the totality of the circumstances.

Appellant was arrested and booked at 10:30 p.m. on Thursday, May 3, 1990. Carl Beadle, a detective with the Pulaski County Sheriff's Department, first talked to appellant about 8:30 the next morning. At the suppression hearing Beadle was first asked whether the appellant wanted to talk about the murders:

Q: Okay. And did you ask Prince Johnson if he wanted to talk to you about it at that time?

A: Yes.

Q: And what did he say?

A: He did not.

Q: All right, and what did you do?

A: Uh—

Q: Let me ask this before you answer. What did he want to do?

A: He wanted to talk about some incidents at Little Rock.

Q: Okay. Some other crimes?

A: Yes.

Q: All right. And what did you do after hearing that?

A: We contacted Little Rock Police Department.

Appellant was then picked up by the Little Rock police who questioned him about the previous robberies. Appellant was returned to the sheriff's department late that afternoon and Beadle questioned him again. The court summarized the testimony concerning the sequence of events of May 3:

> Defendant proceeded to speak of robberies he committed in Little Rock. Defendant was then turned over to Little Rock Police officers who again advised the defendant of his rights pursuant to *Miranda*. Defendant then gave voluntary statements to Little Rock officers concerning the alleged Little Rock aggravated robbery charges. While he was speaking with Little Rock officers, defendant gave spontaneous statements regarding the alleged murders in this case. According to testimony, Little Rock officers did not question the defendant about the alleged homicides, nor did they take a written or recorded statement, but instead advised the defendant to wait to talk about that case to Pulaski County deputies when he returned to the Pulaski County jail. At approximately 4:30 p.m. on the same day, the defendant gave a full and voluntary statement to Sergeant Beadle after having been rewarned of his rights pursuant to *Miranda*.

## A.

### Right to Remain Silent

Appellant contends the 4:30 p.m. statement to Beadle was in violation of *Miranda* because he had indicated earlier in the day that he did not want to talk to police—that he gave a statement only after further interrogation.

Custodial statements are presumed involuntary and the state has the burden of proving otherwise. *Shaw* v. *State*, 299 Ark. 474, 733 S.W.2d 827 (1989). In reviewing the trial court's denial of the motion to suppress, this court makes an independent determination based on the totality of the circumstances and reverses the trial court only if the decision was clearly against a preponderance of the evidence. *Ryan* v. *State*, 303 Ark. 595, 798 S.W.2d 679 (1990). The credibility of the witnesses who testify to the circumstances surrounding the defendant's custodial statement is for the trial court to determine. *Smith* v. *State*, 286 Ark.

247, 691 S.W.2d 154 (1985). In reviewing a ruling on a motion to suppress evidence, we view the evidence in the light most favorable to the state. *Moore* v. *State*, 303 Ark. 514, 798 S.W.2d 87 (1990).

Within the context of an independent review our search focuses on whether the accused wished to remain silent and gave such expression to that desire that any statements made thereafter in response to interrogation are in violation of *Miranda*:

> The individual is always free to exercise the privilege to remain silent and thus, if he "indicates in any manner, at anytime prior to or during questioning, that he wishes to remain silent, the interrogation must cease," *Miranda* v. *Arizona*, 384 U.S. 436 (1966).

Appellant concedes that Beadle's later testimony characterized appellant's remarks as unresponsive:

> Q:  Did the Defendant ever say that he did not want to talk to you about Art's Liquor Store murders?
>
> A:  No.
>
> Q.  Okay. And when the Defendant was brought back to Pulaski County Sheriff's Office that afternoon, did the Defendant ever — Did he want to talk to you then about the Art's Liquor Store murders?
>
> A:  Yes.
>
> Q:  Okay.
>
> . . . .
>
> Q:  He wanted to talk to you about the liquor store, I mean, the Little Rock aggravated robberies at first?
>
> A:  Right.
>
> Q:  And you weren't involved in that case?
>
> A:  That's correct.
>
> Q:  So, you called Little Rock to have him picked up?
>
> A:  Right.
>
> Q:  But at no time during the whole day, the morning, or

in the afternoon or the evening, did he ever say he didn't want to talk to you about the Arch Street liquor store?

A: That's true.

Beadle was questioned further by the trial judge:

Q: Deputy Beadle, I want to make sure I understand what was said here.

A: Yes, sir.

Q: Did this Defendant, during this session after eight thirty or eight forty, ever refuse to tell you that he did not want to give you a statement about this Arch Street affair?

A: No, sir, he did not.

Q: So, when you said he wouldn't, did you mean that he didn't, or that he refused to give you one, sir?

A: We told him that we wanted to talk to him about the Arch Street liquor store, and he said that he didn't know anything about that, and then he went right into some stuff at the Little Rock Police Department.

Q: So, he never did, in fact, say I don't want to talk to you about that or anything of that nature to you in regard to that statement?

A: No, sir, he did not.

■ Appellant contends we should construe Beadle's testimony as indicating that appellant expressed a desire not to talk about the murders. But while Beadle's initial response is arguably ambiguous, it is clear from his testimony as a whole that appellant did not assert a right to remain silent and such discrepancies are for the trial court to resolve. The trial judge explored that aspect of the suppression testimony with some care and we are not persuaded that he erred in his ruling.

## B.

### Appellant Was Not Brought Before
### a Judicial Officer in a Timely Fashion

Appellant urges he was not brought before a judicial officer in a timely fashion as required by Ark. R. Crim. P. 8.1 and

*Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987).

Appellant was arrested at 10:30 p.m. on Thursday, May 3, 1990, and arraigned at 9:00 a.m. on Monday, May 7. He argues this was not a timely fashion as required by Rule 8.1 and, therefore, the confessions taken during that period should be suppressed. There is no merit to the argument.

In *Duncan, supra*, we established a three part test to determine when a statement should be suppressed for a violation of Rule 8.1: 1) The delay must be unnecessary, 2) the evidence must be prejudicial, and 3) the evidence must be reasonably related to the delay. Appellant argues all three prongs have been met.

While the evidence was clearly prejudicial, the trial court found that the delay was not unnecessary and that the statements by appellant were not reasonably related to any delay. Appellant disputes both these findings.

### Unnecessary Delay

The record indicates the county municipal court does not ordinarily sit on Friday unless specific arrangements are made. Appellant argues there was evidence that a particular form, his Arrest and Disposition Report (ADR), was deliberately misplaced. He contends the missing ADR prevented his being arraigned until Monday morning, May 7.

Appellant points out that his statement about the robberies to the Little Rock police was given at approximately 10:40 a.m. on Friday and the statement about the murders to the Pulaski Sheriff's Office was given about 4:30 p.m. that same day. He argues that had he been arraigned on Friday, court would have been held about 10:00 a.m., that he would have been provided with an attorney, that the attorney would have advised him not to make a statement, and any statement taken without his attorney would have been a violation of *Massiah* v. *United States*, 377 U.S. 201 (1964). However, the proof concerning the misplacement of the ADR was conflicting and appellants brief concedes it is not clear what happened. The trial court found there was no deliberate action by the police and we cannot say that finding was clearly against the preponderance of the evidence.

While we concur in the trial court's finding in this regard, appellant's reference to a recent decision of the United States Supreme Court, *County of Riverside* v. *McLaughlin*, ___ U.S. ___, 111 S. Ct. 1661 (1991), prompts additional comment.

In *McLaughlin* the Supreme Court fixed the maximum delay for arraignment at forty-eight hours, pointing out at the same time that a probable cause determination would not pass constitutional muster simply because it is occurs within forty-eight hours:

> Such a hearing may nonetheless violate *Gerstien* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill-will against the arrested individual, or delay for delay's sake.

After forty-eight hours, however, the burden of proof shifts to the state:

> Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. *Nor, for that matter, do intervening weekends.* A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours. [Our emphasis.]

Thus, under *McLaughlin* a delay in excess of forty-eight hours is constitutionally unreasonable even if an intervening weekend caused the delay. The court elaborated on this point:

> The record indicates, however, that the County's current policy and practice do not comport fully with the principles we have outlined. The County's current policy is to offer combined proceedings within two days, exclusive of Satur-

days, Sundays, or holidays. As a result, persons arrested on Thursday may have to wait until the following Monday before they receive a probable cause determination. The delay is even longer if there is an intervening holiday. Thus, the court's regular practice exceeds the 48-hour period we deem constitutionally permissible, meaning that the County is not immune from systemic challenges, such as this class action.

It should be noted that no issues of suppression of custodial statements were decided in *McLaughlin* and that decision does not direct a different result in the case now before us. *McLaughlin* involved a class action challenging by declaratory judgment the county's procedure for probable cause determinations. Thus, although the delay in appellant's arraignment exceeds the time specified in *McLaughlin,* that is simply one prong of the *Duncan* test, which we now address.

## Relationship of Evidence to Delay

In order to suppress evidence taken during confinement, under *Duncan,* a causal connection between the delay and the confession must be shown. No connection has been shown in this case. As the trial court pointed out, appellant waived his rights and agreed to give a statement before any judge would have been available. Consequently, appellant's statement to the police was not attributable to the delay.

In *Ryan* v. *State*, 303 Ark. 595, 798 S.W.2d 679 (1990), confronted with a similar argument, we found that inculpatory statements were not related to a delay of comparable duration, but rather to the desire of the accused to negotiate a favorable plea bargain with authorities. This was evidenced by Ryan's request at the first available opportunity, and before the delay, to talk to federal authorities. By like token, Prince Johnson made it clear at the outset that he was willing to talk to the police about crimes he had been involved in and the trial court correctly found that there was no causal connection between appellant's statements and any delays.

## C.

### *The Statements Made by Appellant Were Involuntary When the Totality of All the Circumstances Are Considered.*

Appellant maintains that under the totality of the circumstances his statements to the police and deputies were not voluntary. Appellant relies on his immaturity, inexperience with the law, the absence of an adult family member when the statements were made and the delay in his arraignment, which we have already discussed. But we are not persuaded by the argument. The trial court rejected these contentions after hearing testimony in considerable detail establishing that the confessions were knowingly and voluntarily made. We are not willing to overturn those findings. *See Shaw* v. *State*, 299 Ark. 474, 773 S.W.2d 827 (1989).

## II

■ On June 22, 1990, appellant filed a motion requesting transfer of the case involving aggravated robberies to juvenile court, pursuant to Ark. Code Ann. § 9-27-318 (1987). At an omnibus hearing on October 26, 1990, the motion to transfer was considered by the trial court and denied. The evidence presented by appellant was limited to his age and the representation by his counsel that appellant had no prior involvement with the law. The only evidence presented by the state was that the crimes involved violence. Appellant contends the trial court erred in not ordering a transfer to juvenile court.

■ In *Vickers* v. *State*, 307 Ark. 298, 819 S.W.2d 13 (1991), the law affecting transfer to juvenile court was summarized:

[O]ur holdings are now clear that the standard for review is whether the circuit court's denial of a transfer was clearly erroneous.

In making the transfer decision, the circuit court must consider the following factors:

(1) The seriousness of the offense, and whether violence was employed by the juvenile in the commission of the offense.

(2) Whether the offense is part of a repetitive pattern of adjudicated offenses which would lead to the determination that the juvenile is beyond rehabilitation under existing rehabilitation programs, as evidenced by past efforts to treat and rehabilitate the juvenile and the response to such efforts; and

(3) The prior history, character traits, mental maturity and any other factor which reflects upon the juvenile's prospects for rehabilitation.

Arkansas Code Ann. § 9-27-318(e) (1987). If the court finds that a juvenile should be tried as an adult, it must do so by clear and convincing evidence.

We have held in this regard that a criminal information is sufficient evidence to establish that the offense charged is of a serious and violent nature. We have further held the circuit court is not required to give equal weight to each of the above-mentioned statutory criteria. Nor is the court required to make specific findings of fact in a juvenile transfer case.

Under the above standards and guidelines, did the trial court err in failing to grant the motion to transfer? We hold it did not.

We considered the sufficiency of violence attached to a crime as a sufficient factor to refuse transfer in *Walker* v. *State*, 304 Ark. 393, 803 S.W.2d 502 (1991). The crime in *Walker* was first degree murder whereas the offenses in this case are aggravated robbery. Since counsel's representation to the trial court that appellant had no prior criminal record does not constitute evidence (*see Walker* v. *State, supra*), the question before us is whether multiple counts of aggravated robbery are sufficient to withstand a motion for transfer when the opposing evidence is essentially the defendant's age.

In *Walker*, the trial court had before it several factors favoring transfer: some evidence tended to negate premeditation; several witnesses testified that the defendant was "an average fourteen-year-old" and was polite, helpful, honest and neighborly, who played baseball, liked to fish and who had shown no previous tendency toward violence. Notwithstanding such testimony, we held the trial court's reason for refusing transfer

was sufficient.

While the charge here is not identical to *Walker*, it is nonetheless serious. First degree murder and aggravated robbery are both class Y felonies. The difference is that in murder, violence is necessarily present and though aggravated robbery can be completed without the actual use of violence [Ark. Code Ann. § 5-12-103 (1987)], nevertheless, there are policy reasons why the offenses are treated comparably by the legislature and the trial court could take note of that parity. While we are not here concerned with murder, as in *Walker*, the mitigating factors presented in *Walker* are largely lacking here and this appellant is two years older than in *Walker*.

■ *Bradley* v. *State*, 306 Ark. 621, 816 S.W.2d 605 (1991), involved sixteen and seventeen-year-old defendants who were charged with aggravated assault, Ark. Code Ann. § 5-13-204 (1987), a class D felony, for a shooting that occurred while appellants were in a crowd of people at Riverfest. That was the only evidence presented by the state and appellants presented no evidence to support transfer. Based on the state's evidence we could not say that the trial court's finding was clearly against the preponderance of the evidence. Nor can we here conclude the trial court's finding was clearly against the preponderance of the evidence.

Pursuant to Rule 11(f) of the Rules of the Supreme Court and Court of Appeals of the State of Arkansas, and pursuant to Ark. R. Crim. P. 36.24, an examination of the complete record has been made for any prejudicial error which may have been objected to below, but not argued on appeal.

For the reasons stated, the judgment appealed from is affirmed.