Michael Thomas HAMILTON *v.* STATE of Arkansas

CR 94-603                                           896 S.W.2d 877

Supreme Court of Arkansas
Opinion delivered May 1, 1995

*William R. Simpson, Jr.*, Public Defender, *Mac Carder, Jr.*, Deputy Public Defender, by: *C. Joseph Cordi, Jr.*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. Appellant Michael Thomas Hamilton, a juvenile, was charged with first-degree murder in circuit court, convicted of manslaughter, and sentenced to a ten-year term of imprisonment. This case was transferred to us from the court of appeals under Ark. Sup. Ct. R. 1-2(a)(3). Hamilton argues on appeal that the circuit court erred in allowing hearsay testimony at a hearing on his motion to transfer his case to juvenile court. Inasmuch as the circuit court's findings were not premised on hearsay testimony, but, rather, upon the information filed against Hamilton, we affirm.

## Facts

The appellant, Michael Thomas Hamilton, was charged by felony information on December 7, 1992, with first-degree murder in connection with the shooting death of eleven-year-old Shadrick Flemons at his home at 8 Winnie Cove in Jacksonville. Hamilton, who was fourteen on the date of the alleged offense, November 4, 1992, was charged as an adult in circuit court. On February 5, 1993, Hamilton filed a motion to transfer his case to juvenile court.

A hearing was held on the motion in circuit court on February 19, 1993, at which Detective Steven Ingram of the Jacksonville Police Department testified that he arrived at the scene of the shooting and interviewed three witnesses — Jeremy Wells, David Back and Matthew Duggie. Over Hamilton's hearsay objection, Detective Ingram testified that the three young witnesses told him that they were playing "war games" amongst some trees in the front yard of 8 Winnie Cove when they observed Hamilton and the victim, who had a toy gun, arguing. According to Detective Ingram, two of the three boys told him that they watched Hamilton go into the house and retrieve a rifle off a gun rack. It was Detective Ingram's testimony that one of the witnesses told

him that Hamilton cocked the rifle back "like maybe he was load-
ing it," picked up a small box, put it down, then went outside to
the front door and pointed the weapon at the victim. Apart from
his testimony giving rise to the hearsay objection, Detective
Ingram testified without objection that the eleven-year-old vic-
tim "had been shot in the head almost between the eyes." Detec-
tive Ingram further testified, also without objection, that the pre-
liminary autopsy report indicated that the shot which killed the
victim was fired from close range. The circuit court also heard
testimony from Hamilton and Reverend Marvin Thomas in sup-
port of Hamilton's motion to transfer before denying the motion
"based upon the level of violence that is alleged here."

Hamilton's case was tried in circuit court before a jury on
October 13, 1993. The jury returned a guilty verdict for
manslaughter, and the circuit court sentenced Hamilton to a ten-
year term of imprisonment. In claiming as his sole point of error
that "the circuit court erred by allowing the state to introduce
hearsay testimony during the hearing on the appellant's motion
to transfer to juvenile court," Hamilton, in reality, asserts that
the trial court, in refusing to transfer his case to juvenile court,
erroneously predicated its findings to retain jurisdiction on hearsay
evidence.

### Appealable order

The State asserts that this appeal should be dismissed as
untimely since Hamilton failed to appeal the circuit court's Feb-
ruary 19, 1993, ruling denying transfer of his case to juvenile
court. In making this assertion, the State asks us to adopt the
rationale of *State* v. *Harwood*, 98 Idaho 793, 572 P.2d 1228
(1977), in which the Idaho Supreme Court held that a juvenile
cannot challenge a trial court's denial of a motion to transfer on
direct appeal. We agree with the State's argument, and find per-
suasive the following language in *Harwood:*

> To allow a defendant who has been convicted in the supe-
> rior court to question on appeal the propriety of the juve-
> nile court's finding would afford him an opportunity to
> secure a reversal of a judgment of conviction even though
> he was found guilty after an errorless trial. Such a defen-
> dant should not be allowed to silently speculate on a favor-
> able verdict and then after an adverse judgment is entered

proclaim that the juvenile court's finding was erroneous. Moreover, it is in the accused's best interest to seek immediate relief from an improper finding in the juvenile court so he may be spared the burden and public scrutiny associated with a criminal trial. Additionally, the delay inherent in criminal prosecutions may substantially prejudice a juvenile court reconsideration of its prior finding of unfitness should the cause be remanded after a review of criminal proceedings.

572 P.2d at 1229, *quoting People* v. *Chi Ko Wong*, 18 Cal.3d 698, 135 Cal. Rptr. 392, 557 P.2d 976 (1976).

■ In short, we adopt the reasoning of *Harwood* by holding that a juvenile cannot challenge transfer orders on direct appeal from a judgment or conviction of the circuit court. In doing so, we must determine whether, pursuant to the status of our current law, our holding should be prospective.

Prior to 1989, it was commonplace for the challenge of transfer orders from juvenile court to circuit court or from circuit court to juvenile court to be raised on appeal. This practice continued until the General Assembly passed Act 273 of 1989, which repealed the Juvenile Code of 1975. This enactment, codified as Ark. Code Ann. § 9-27-318(h) (Repl. 1993) provides in pertinent part that:

> Any party may appeal from an order granting or denying the transfer of a case from one court to another court having jurisdiction over the matter.

Since the passage of Act 273, we have considered a number of cases involving transfer by way of interlocutory appeal. *See Davis* v. *State*, 319 Ark. 613, 893 S.W.2d 678 (1995); *Sebastian* v. *State*, 318 Ark. 494, 885 S.W.2d 882 (1994); *Beck* v. *State*, 317 Ark. 154, 876 S.W.2d 561 (1994); *Walter* v. *State*, 317 Ark. 274, 878 S.W.2d 374 (1994); *Bell* v. *State*, 317 Ark. 289, 877 S.W.2d 579 (1994); *Johnson* v. *State*, 317 Ark. 521, 878 S.W.2d 758 (1994); *Whitehead* v. *State*, 316 Ark. 563, 873 S.W.2d 800 (1994); *Oliver* v. *State*, 312 Ark. 466, 851 S.W.2d 415 (1993); *Holland* v. *State*, 311 Ark. 494, 844 S.W.2d 943 (1993); *Wicker* v. *State*, 310 Ark. 580, 839 S.W.2d 186 (1992); *Walker* v. *State*, 304 Ark. 393, 803 S.W.2d 502, *supplemental opinion on denial of rehearing*, 304

Ark. 402-A, 805 S.W.2d 80 (1991); *Slay v. State*, 309 Ark. 507, 832 S.W.2d 217 (1992); *Cobbins v. State*, 306 Ark. 447, 816 S.W.2d 161 (1991); *Bradley v. State*, 306 Ark. 621, 816 S.W.2d 605 (1991). However, we have also described appeals from denials of transfer motions as "although . . . interlocutory in nature, they are appealable by statute." *Webb v. State*, 318 Ark. 581, 886 S.W.2d 618 (1994), *citing State v. Hatton*, 315 Ark. 583, 868 S.W.2d 492 (1994). While we have not specifically held that denials of transfer motions are appealable after a judgment of conviction, we have addressed this issue in at least two cases on direct appeal following a conviction in circuit court. *See Tucker v. State*, 313 Ark. 624, 855 S.W.2d 948 (1993); *Johnson v. State*, 307 Ark. 525, 823 S.W.2d 440 (1992). *See also Porter v. State*, 43 Ark. App. 110, 861 S.W.2d 122 (1993).

In reviewing our cases and legislation dealing with the issue of denials of transfer, it is obvious that, prior to the passage of Act 273 of 1989, codified at Ark. Code Ann. § 9-27-318(h), direct appeals were the preferred method of review; permissive interlocutory appeals were made practicable only by the passage of this act. Our cases since that date have seemed to go both ways, thus it would be unconscionable at this time to deny or foreclose Hamilton's right to appeal. For this reason, we adopt a prospective rule regarding the appeal of transfer orders pursuant to Ark. Code Ann. § 9-27-318(h), and hold that for criminal prosecutions commenced after the finality of this opinion, an appeal from an order granting or denying transfer of a case from one court to another having jurisdiction over juvenile matters must be considered by way of interlocutory appeal, and an appeal from such an order after a judgment of conviction in circuit court is untimely and will not be considered.

### Denial of transfer

In examining the denial of Hamilton's motion to transfer, the standard of review in such juvenile-transfer cases is whether the circuit court's denial of the motion was clearly erroneous. *Davis v. State, supra; Bell v. State, supra; Beck v. State, supra; Vickers v. State*, 307 Ark. 298, 819 S.W.2d 13 (1991). However, we do not reach the merits of Hamilton's hearsay argument, as there is no indication that the trial court's findings were based on anything other than the information filed with the trial

court. The circuit court denied the motion to transfer, obviously referring to the criminal information. We have said that the serious and violent nature of an offense is a sufficient basis for denying a motion to transfer and trying a juvenile as an adult, and that a criminal information, on its own, is sufficient to establish that the offense charged is of a serious and violent nature. *Id.; See also Walker* v. *State, supra.* Here, the information alleged that Hamilton committed first-degree murder by "unlawfully, feloniously, and with the purpose of causing the death of another person, did cause the death of Shadrick Flemons." In short, the charge by way of the criminal information alone was clear and convincing evidence which supported the circuit court's denial of the motion to transfer; accordingly, we cannot say that its ruling was clearly erroneous.

Affirmed.

NEWBERN and ROAF, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. Justice Roaf's dissenting opinion expresses my views on this case, and I join in that opinion. I wish to add only that the majority has now given us a prime example of the error we made in *Walker* v. *State*, 304 Ark. 393, 803 S.W.2d 502 (1991). There we placed the burden of proof on the juvenile rather than the State with respect to whether the juvenile should be tried as an adult. That has allowed us to permit the trial courts, time and again, to sanction adult trials for children solely on the basis of a charge of a violent crime.

No doubt some people below the age of 18 are tough, hardened, and incorrigible. In my view, the transfer provisions should be interpreted so that such persons wind up being treated as adults. The State, however, in a case such as this one, should be required to show more than that a youngster who was aged 14 has been charged with committing one act of violence.

I respectfully dissent.

ROAF, J., joins in this dissent.

ANDREE LAYTON ROAF, Justice, dissenting. I cannot argue with the rationale employed by the majority in holding that henceforth, juvenile transfer orders may not be appealed after a judgment of conviction in circuit court. However, the state will not

be appealing from circuit court convictions after a transfer or refusal to transfer, as the case may be; this holding will only affect juveniles, and I must dissent.

Of course a juvenile can be "found guilty after an errorless trial," even when he should not have been tried in circuit court in the first place. The question for me is how he got to circuit court, not what happened afterward. In light of this court's previous holdings in *Ring* v. *State*, 320 Ark. 128, 894 S.W.2d 944 (1995), and *Boyd* v. *State*, 313 Ark. 171, 853 S.W.2d 263 (1993), it seems to be open season on juveniles, at least in the context of juvenile transfer hearings. Indeed, the state in the instant case now seriously argues that the rules of evidence should not apply in such hearings. The majority wisely does not reach this issue in this sad case involving young playmates playing without adult supervision and with access to unsecured guns and ammunition. Undoubtedly, it is an issue that we will confront again.

I respectfully dissent.

NEWBERN, J., joins the dissent.