Thomas FELTON, as Personal Representative of the Estate of A.G. Felton, Deceased *v.* REBSAMEN MEDICAL CENTER, INC., and The Medical Assurance Company, Inc., the Liability Insurance Carrier for Rebsamen Medical Center, Inc.

07-724                                                    284 S.W.3d 486

Supreme Court of Arkansas
Opinion delivered May 22, 2008

[Rehearing denied June 26, 2008.*]

---

* HANNAH, C.J., and BROWN AND IMBER, JJ., would grant rehearing.

*Hare, Wynn, Newell & Newton, LLP*, by: *Paul Byrd*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellants.

*Anderson, Murphy & Hopkins, LLP*, by: *Mariam T. Hopkins, Scott D. Provencher*, and *Mindy D. Pipkin*, for appellees.

PAUL E. DANIELSON, Justice. Appellant Thomas K. Felton, as personal representative of the estate of A.G. Felton, deceased, appeals from the circuit court's order of dismissal with prejudice granting summary judgment to appellees Rebsamen Medical Center, Inc., and its insurer, The Medical Assurance Co., Inc. Felton asserts that the circuit court erred in granting summary judgment to both Rebsamen and Medical Assurance. We affirm the circuit court's order.

On December 17, 2004, Felton filed a complaint against Rebsamen and Medical Assurance, asserting a cause of action for wrongful death, including claims of medical malpractice and ordinary negligence, and survival.[1] The complaint alleged that Rebsamen "was and remains a non-profit corporation engaged in caring for individuals who are in need of medical care and treatment." It further alleged that if Rebsamen asserted that it was not subject to suit for tort, "Plaintiff hereby brings a direct action against THE MEDICAL ASSURANCE COMPANY, INC. ("MEDICAL ASSURANCE"), the liability insurance carrier for REBSAMEN, pursuant to Ark. Code Ann. § 23-79-210."

Rebsamen answered the complaint, admitting that Medical Assurance had provided it with liability insurance coverage at certain times and further admitting "that it is entitled to immunity from damages exceeding its insurance policy limits based on its status as a charitable institution." It further affirmatively pled that it was "a charitable institution and is entitled to immunity from any damages beyond its insurance policy limits." Medical Assurance also answered, denying that the circuit court had jurisdiction over it and admitting that it had provided liability insurance coverage during certain time periods for Rebsamen, "a charitable institution." It further pled, affirmatively, that Rebsamen was a charitable institution and was entitled to immunity from any

---

[1] While the complaint alleged that the decedent choked and died on January 12, 2002, it is evident from the record and the briefs on appeal that the decedent died on January 12, 2003.

damages beyond its insurance policy limits. In addition, Medical Assurance affirmatively pled that "based on *Clayborn v. Bankers Standard Ins. Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002), no cause of action lies against this defendant and, therefore, the complaint against it should be dismissed."[2]

On February 18, 2005, the circuit court entered an order of dismissal without prejudice as to Medical Assurance, based upon Felton's oral motion to nonsuit his claims against it.[3] However, on July 12, 2006, Felton filed a first amended complaint reasserting its claims against Medical Assurance, stating:

> 6. On December 15, 2005, the Arkansas Supreme Court specifically overruled both the *Scamardo* [*v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004)] and *Clayborn* [*v. Bankers Standard Ins. Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002)] cases in the case of *Low v. Insurance*

---

[2] A brief recitation of this court's jurisprudence involving the doctrine of charitable immunity may prove helpful. Prior to 2002, this court had held that charitable organizations were immune from execution on their property, and, thus, were immune from tort liability. *See, e.g., Helton v. Sisters of Mercy of St. Joseph's Hosp.*, 234 Ark. 76, 351 S.W.2d 129 (1961); *Crossett Health Ctr. v. Croswell*, 221 Ark. 874, 256 S.W.2d 548 (1953). In addition, we had held that where a charitable organization was not subject to an action in tort, its liability insurance carrier was subject to a direct action. *See, e.g., George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999).

However, in 2002, in *dicta*, this court distinguished between a charitable organization's immunity from suit and immunity from liability, based on a distinction made in the context of the acquired-immunity doctrine. *See Clayborn v. Bankers Std. Ins. Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002). We then reaffirmed this distinction in *Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004), and permitted the plaintiff in that case to sue a charitable organization; however, the plaintiff could not collect on any judgment because the charitable organization was immune from execution. Both *Clayborn* and *Scamardo* were overruled by this court in *Low v. Insurance Co. of North America*, 364 Ark. 427, 220 S.W.3d 670 (2005), wherein we again held that plaintiffs could not bring suit against charitable organizations. In our recent decision of *Sowders v. St. Joseph's Mercy Health Center*, 368 Ark. 466, 247 S.W.3d 514 (2007), we summarized the law since our decision in *Low* and as it now stands:

> Plaintiffs alleging injury by charitable organizations can bring suit against the charities' liability insurer via the direct-action statute, Ark. Code Ann. § 23-79-210. Further, injured plaintiffs may bring suit against employees of charitable organizations.

368 Ark. at 470, 247 S.W.3d at 517.

[3] Accordingly, pursuant to the savings statute, Felton had until February 20, 2006, in which to refile his claims against Medical Assurance. *See* Ark. Code Ann. § 16-56-126(a)(1) (Repl. 2005). Because February 18 fell on a Saturday, Felton had until the next business day, Monday, February 20, to refile his claims. *See* Ark. R. Civ. P. 6 (2007).

*Co. of N.Am.*, ___ S.W.3d ___, 2005 WL 3436667, 8 (Ark. Dec. 15, 2005) (Attached hereto as *Exhibit A*). In overruling these cases, the Arkansas Supreme Court returned to the statutory interpretation that the "not subject to suit for tort" language in the direct action statute (Ark. Code Ann. § 23-79-210), as being synonymous with a charitable/not-for-profit organization's immunity from tort liability. *Id.* at 7.

7. Thus, according to the Arkansas Supreme Court's ruling in *Low, supra*, MEDICAL ASSURANCE is a proper party to this action. Therefore, Thomas K. Felton, as Plaintiff herein, adopts, re-alleges and incorporates by reference each and every allegation set forth in Plaintiff's original Complaint together with any and all additional charging allegations set forth herein not inconsistent with the preceding and as if set forth word for word against both REBSAMEN and MEDICAL ASSURANCE.

In its answer to this complaint, Rebsamen admitted this court's decision in *Low v. Insurance Co. of North America*, 364 Ark. 427, 220 S.W.3d 670 (2005), but denied the allegations in paragraphs six and seven of the complaint. It further incorporated by reference, "as if set out word for word, its answer to the plaintiff's original complaint, including affirmative defenses, . . . [that] would include, but not be limited to, the affirmative defense of charitable immunity." Medical Assurance similarly responded and affirmatively asserted that the first amended complaint was barred by the statute of limitations.

On January 31, 2007, Medical Assurance moved for summary judgment in the matter, asserting that Felton's cause of action against it was time-barred. In its brief in support of its motion for summary judgment, Rebsamen claimed that it was entitled to summary judgment due to its status as a nonprofit, charitable entity, rendering it immune from tort liability under Arkansas law. Felton responded to Rebsamen's motion, claiming that it had "conditioned its charitable immunity defense" and, thus, waived the defense. He further alleged that because Rebsamen led him to believe his claims were covered up to its policy limits by documents turned over in discovery, Rebsamen should be estopped from asserting that it was immune from the action. In response to Medical Assurance's summary-judgment motion, Felton claimed that Medical Assurance had waived its statute-of-limitations defense and should be estopped from asserting it. He further asserted that laches should also bar its defense.

On March 14, 2007, a hearing was held on the motions for summary judgment. During the hearing, counsel for Felton urged that this court's decision in *Low v. Insurance Co. of North America, supra*, should be applied prospectively to cases filed after the date of the decision, December 15, 2005. Midway through the hearing, the circuit court made the following ruling with respect to Medical Assurance's motion:

> I've heard enough. Thank you. All right. I'm going to grant your motion for a summary judgment with regards to this. I do think that the Low case does apply. I think that in this particular case there's no question that the action was filed outside the time limit, so I don't really think that's the issue.
>
> I think that the arguments are more so along the lines of whether there's an estoppel or waiver, but I think that based upon the case law and the cases cited that the — I don't believe that the court would prospectively apply with Low. I think it has already retrospectively applied Low. So it would, I guess, go against its own rulings if it decides to do that. So I'll grant [Medical Assurance's] motion with regards to that.

It later ruled on Rebsamen's motion, stating:

> All right. I think the situation that exists here is one where a party has insurance and there's no question that they have insurance and that there may be liability on the part of the party, but the issue becomes whether or not the limitations period in the statute or whether a defense in the statute be the one that would be applicable and in this case, what I have not heard is that the argument with regards to charitable immunity does not apply.
>
> So I think that there's no question under Low that Rebsamen would be immune from liability. So I think that part of the case is easy to decide.
>
> I think the only issue is whether or not there's been a waiver of that in the answer and I agree that if the first answer had been the only answer in this case that had been filed, then I would be with you on that one because it does not state — or it does not state that it is immune completely.
>
> It just says that it's immune up to the point of liability, but the problem is that in July of 2006, they file an answer incorporating word for word everything that was filed in the first answer, which basically says that, and then adds in an additional line saying "and also we assert the defense of charitable immunity."

Now, in asserting that defense, then I have to go back to Low and Low says that basically the hospital is immune unless there's something that would indicate that the filing of it was not proper and that it is not appropriate — it wasn't appropriately raised in the pleading. You know, the waiver may arguably apply. Is it one of those 12(b)(6) motions that should have been raised when the complaint was filed or 12(b)(10) or (8) or whichever one one [sic] may arguably say would apply?

That might be true with regards to the first one, but when they filed a response to the amended complaint and they assert that, then I believe that is timely.

So I'm going to grant their motion for summary judgment with regards to that as well.

An order granting the motions for summary judgment and dismissing Rebsamen and Medical Assurance was entered, and Felton timely filed his notice of appeal.

The first issue to be addressed is whether the circuit court erred in granting summary judgment to Rebsamen. Felton argues that Rebsamen failed to raise the defense of charitable immunity in its answer to his original complaint and neglected to amend its answer until after the limitations period had run with respect to Medical Assurance. He claims that because Rebsamen did not timely amend its pleadings to assert the full measure of charitable immunity as it was obligated to do, it waived the defense. He maintains that Rebsamen misled him to his prejudice and that its actions substantially affected his rights. He further avers that Rebsamen should be estopped from asserting its charitable-immunity defense in that it led him to believe throughout the course of the case that it only intended to claim charitable immunity from damages exceeding its insurance-policy limits. He contends that this court's decision in *Low v. Insurance Co. of North America, supra*, should be applied prospectively and that his case should proceed under this court's prior decisions of *Clayborn v. Bankers Standard Insurance Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002), and *Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004). Finally, he urges that if all other arguments fail, this court should remand the case for discovery as to whether Rebsamen is a charity.

Rebsamen urges that a reading of its pleadings demonstrates that it consistently pled charitable immunity and that, had Felton acted in a diligent manner in refiling his action against Medical

Assurance, this matter would not be on appeal. With respect to its answer to the first amended complaint, Rebsamen maintains that it affirmatively asserted charitable immunity, not only incorporating its previous answer, including affirmative defenses, but separately identifying "charitable immunity." Regarding estoppel, Rebsamen contends that its actions have been neither wrongful nor misleading. It further asserts that it did not take inconsistent positions. As to *Low*, Rebsamen avers that the circuit court's finding that it applied retroactively was proper. Finally, it argues that the circuit court did not abuse its discretion in denying Felton additional time in which to conduct discovery.

The law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *See Stromwall v. Van Hoose*, 371 Ark. 267, 265 S.W.3d 83 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *See id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id.* Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *See id.*

As already stated, at issue here is whether the circuit court erred in granting Rebsamen summary judgment. It did not. Following this court's decision in *Low v. Insurance Co. of North America, supra,* Rebsamen, as a charitable organization, was immune and no longer subject to suit. Because Rebsamen affirmatively pled the defense of charitable immunity, there was no error by the circuit court.

A review of Rebsamen's pleadings reveals that Rebsamen affirmatively pled its charitable-immunity defense. In its answer to Felton's original complaint, Rebsamen stated:

4.

Defendant admits that Medical Assurance Company, Inc., has provided liability insurance coverage for Rebsamen at certain times.

Defendant further admits that it is entitled to immunity from damages exceeding its insurance policy limits based on its status as a charitable institution. Defendant denies each and every remaining allegation contained in paragraph 4 of the complaint.

. . . .

18.

Pleading affirmatively, defendant states that Rebsamen Medical Center is a charitable institution and is entitled to immunity from any damages beyond its insurance policy limits.

Rule 8(c) of the Arkansas Rules of Civil Procedure provides:

(c) *Affirmative Defenses.* In responding to a complaint, counter-claim, cross-claim or third party claim, a party shall set forth affirmatively accord and satisfaction, arbitration and award, comparative fault, discharge in bankruptcy, duress, estoppel, exclusiveness of remedy under workmen's compensation law, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, set-off, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

Ark. R. Civ. P. 8(c) (2007). While it does not appear that we have previously addressed whether charitable immunity is an affirmative defense, other states have so held. *See, e.g., Isaacson v. Husson College,* 297 A.2d 98 (Me. 1972); *Grueninger v. President & Fellows of Harvard College,* 343 Mass. 338, 178 N.E.2d 917 (1961). We agree and hold that charitable immunity is an affirmative defense, falling into the catch-all provision of Rule 8(c), as it is "any other matter constituting an avoidance or affirmative defense." Ark. R. Civ. P. 8(c).

We have held that defenses under Rule 8(c) must be specifically pled to be considered by the circuit court. *See State Office of Child Support Enforcement v. Morgan,* 364 Ark. 358, 219 S.W.3d 175 (2005). A failure to plead an affirmative defense can result in a waiver and exclusion of the defense from the case. *See* 71 C.J.S. *Pleading* § 161 (2008). *See also* 61A Am. Jur. 2d *Pleading*

§ 291 (2008); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278 (3d ed. Supp. 2008). Here, Rebsamen clearly pled the defense of charitable immunity.

While Felton urged in his briefs and at oral arguments that Rebsamen should have amended its answer following our decision in *Low* and pled the defense in accord with the law stemming from that decision, his argument is without merit. A charitable defendant is entitled to its charitable–immunity defense no matter how that defense is defined by law, so long as the charitable defendant affirmatively pled the defense. In the instant case, it is clear that Rebsamen affirmatively pled the defense of charitable immunity, thus, it was entitled to its defense both before and after our *Low* decision.

Nor are Felton's arguments regarding estoppel and inconsistent positions valid. The elements of estoppel include:(1) the party to be estopped knew the facts; (2) the party to be estopped intended that the conduct be acted on; (3) the party asserting the estoppel was ignorant of the facts; and (4) the party asserting the estoppel relied on the other's conduct and was injured by that reliance. *See Southern Farm Bur. Cas. Ins. Co. v. Tallant*, 362 Ark. 17, 207 S.W.3d 468 (2005). These elements are simply not met in the instant case, where Rebsamen affirmatively and specifically pled the doctrine of charitable immunity, thereby placing Felton on notice of its defense. Moreover, no inconsistent position was taken by Rebsamen, as it has always maintained, since the filing of its initial answer, that it was a charitable organization entitled to immunity.

We further decline Felton's invitation to prospectively apply our decision in *Low v. Insurance Co. of North America, supra*. First and foremost, we have long held that our decisions are applied retro-spectively — a decision of the court, when overruled, stands as though it had never been. *See Flemens v. Harris*, 323 Ark. 421, 915 S.W.2d 685 (1996); *Baker v. Milam*, 321 Ark. 234, 900 S.W.2d 209 (1995).[4] In addition, we have previously applied our *Low* decision retroactively and held that its retroactive application did not result in any unfair prejudice to the appellant in that case. *See Sowders v.*

---

[4] Contrary to the dissent's claim that prospective application of new case law is plain, our case law is in fact very clear that our decisions are applied retrospectively and that an overruled decision stands as though it had never been. Since 1886, and as recently as 1997, we

*St. Joseph's Mercy Health Ctr.*, 368 Ark. 466, 247 S.W.3d 514 (2007). The same holds true in the instant case.

■ Here, the retroactive application of our decision in *Low* is neither unfair, nor prejudicial to Felton, as the decision in *Low* was delivered on December 15, 2005, prior to the expiration of Felton's savings limitations period, which ran on February 20, 2006. While Felton claims that this court's decisions have "whip-

---

have so held. *See Looney v. Bolt*, 330 Ark. 530, 955 S.W.2d 509 (1997); *Taliafero v. Barnett*, 47 Ark. 359, 1 S.W. 702 (1886). For that reason, Felton had no clear right to believe that our *Low* decision would be applied prospectively only.

In addition, while the dissent relies on our decisions in *Aka v. Jefferson Hospital Ass'n, Inc.*, 344 Ark. 627, 42 S.W.3d 508 (2001), and *Parish v. Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968), *superseded by statute*, Act 165 of 1969, for the prospective application of *Low*, such reliance ignores the general rule of *Taliafero v. Barnett, supra*, and its progeny. In both *Aka* and *Parrish*, we deviated from this general rule of retroactive application and held as we did to provide Mr. Aka and the Parishes the benefit of their "industry, expense and effort . . . for having given to this Court the opportunity to rid the body of our law of this unjust rule." *Parish*, 244 Ark. at 1254, 429 S.W.2d at 52. Indeed, there are other exceptions. *See also Hare v. General Contract Purchase Corp.*, 220 Ark. 601, 610, 249 S.W.2d 973, 978 (1952) (permitting a caveat, or deviation from the general rule, "so as not to entrench on property rights acquired by reason of our previous decisions"); S.R. Shapiro, Comment Note, *Prospective or Retroactive Operation of Overruling Decision*, 10 A.L.R.3d 1371, § 5[b] (1966) (recognizing another exception to the general rule of retroactive application "where the effect of such operation would be to overturn contract or property rights which had previously been acquired on the faith of the overruled case").

However, none of those exceptions apply in the instant case. Unlike Mr. Aka and the Parishes, Felton has brought about no change in the law, nor did he have a vested property right in his wrongful-death claim. Instead of pursuing his claim in accordance with the law of *Low*, he simply seeks to avoid the application of the decision to his case in contravention of our general rule.

Recognizing this general rule, Felton relies on another exception to the general rule, that is, where required by equity or in the interest of justice. Felton argues that this is one such situation, and the dissent agrees, stating that the application of our *Low* decision to this case is unfair. Felton maintained in oral arguments that prospective application should occur where prejudice can be shown, but Felton has simply failed to demonstrate any prejudice in the instant case.

Application of our decision in *Low* is neither unfair nor prejudicial where Felton had plenty of time in which to amend his complaint in accord with *Low*. Moreover, counsel for Felton on appeal acknowledged in oral arguments that Felton was charged with knowledge of our decision in *Low*, stating "that there is no question that we are charged with that knowledge [of the change in the law], that we were to know that the case [*Low*] was handed down." It is, therefore, rudimentary that the general rule of retrospective application applies to our decision in *Low*.

sawed" him, a review of the record and this court's jurisprudence reveals that not to be the case, where Felton had more than two months in which to refile his claims against Medical Assurance in accord with the law as stated in *Low*. Our decision in *Low* did not time bar Felton's claims at all, and, therefore, we decline to apply *Low* prospectively.

■ As his final argument under his first point on appeal, Felton avers that we should remand the matter to the circuit court for discovery as to whether Rebsamen is indeed a charity because he was deprived of any opportunity to conduct discovery on the question. Felton fails to cite to any authority that would permit this court to remand the matter for further discovery. Without such authority, we decline to do so. *See, e.g., Searcy Farm Supply, LLC v. Merchants & Planters Bank*, 369 Ark. 487, 256 S.W.3d 496 (2007).

For all of these reasons, we affirm the circuit court's grant of Rebsamen's summary-judgment motion.

At issue in Felton's second point on appeal is whether the circuit court erred in granting summary judgment to Medical Assurance. Felton argues that Medical Assurance waived any limitations defense against his claims because Medical Assurance and Rebsamen induced him to believe that his damages would be covered by liability insurance, conditioning Rebsamen's affirmative defense of charitable immunity as applying only to damages beyond its insurance policy limits. He urges that even though Medical Assurance acknowledged the statute-of-limitations defense in its answer to the amended complaint, it did not fully assert the defense until it filed its summary-judgment motion, the delay of which induced him to believe that Medical Assurance would continue to provide insurance coverage to Rebsamen and that his damages would be covered. Finally, he claims that laches applies because Medical Assurance did not seek relief by way of its statute-of-limitations defense for approximately six months. Medical Assurance responds that it properly asserted the statute of limitations, averring that it did not waive the defense, nor should it be estopped from asserting it or be barred by the doctrine of laches.

We hold that the circuit court did not err in granting summary judgment to Medical Assurance. Just as was the case with Rebsamen, a review of the record reveals that Medical Assurance specifically, sufficiently, and timely pled its statute-of-limitations defense in its answer to the amended complaint. In its answer to

the first amended complaint, in which Felton reasserted his claims against Medical Assurance, Medical Assurance stated:

9.

It affirmatively asserts the first amended complaint is barred by the statute of limitations.

As was the case with Rebsamen's pleading of its charitable-immunity defense, we hold that Medical Assurance specifically pled, in accord with Ark. R. Civ. P. 8, its statute-of-limitations defense. While Felton claims that he was induced by Medical Assurance's actions into failing to amend his complaint until July, his claim has no merit. Indeed, Medical Assurance had been nonsuited and was not even a party to the litigation until it was brought back in by Felton's first amended complaint. Moreover, once Felton filed his first amended complaint, Medical Assurance clearly and affirmatively pled its statute-of-limitations defense in its answer to that complaint. Accordingly, Felton's arguments regarding waiver and estoppel fail as they did above with Rebsamen.

Nor is Felton's argument regarding laches successful. This court has summarized the laches defense by stating that it is based on the equitable principle that an unreasonable delay by the party seeking relief precludes recovery when the circumstances are such as to make it inequitable or unjust for the party to seek relief. See Royal Oaks Vista, L.L.C. v. Maddox, 372 Ark. 119, 271 S.W.3d 479 (2008). The laches defense requires a detrimental change in the position of the one asserting the doctrine, as well as an unreasonable delay by the one asserting his or her rights against whom laches is invoked. See id. Laches is simply inapplicable to the instant case, where Medical Assurance timely asserted its statute-of-limitations defense after being brought back into the litigation, and no unreasonable delay was present. For these reasons, the circuit court did not err in granting Medical Assurance's motion for summary judgment. Accordingly, we affirm the circuit court's orders of summary judgment.

Affirmed.

GLAZE, J., concurs.

HANNAH, C.J., and BROWN and IMBER, JJ., dissent.

JIM HANNAH, Chief Justice, dissenting. I respectfully dissent. Felton is being punished for complying with the law. When confronted with the law in *Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004), which held that a medical insurer was no longer subject to a direct action under Ark. Code Ann. § 23-79-210 (Repl. 2004), Felton voluntarily nonsuited the insurer. Had Felton refused to voluntarily nonsuit, it is possible that *Low v. Insurance Co. of North America*, 364 Ark. 427, 220 S.W.3d 670 (2005), which overruled *Scamardo*, might have interceded and saved his action against the insurer before a motion to dismiss was brought and heard under *Scamardo*. However, Felton did not do that. He relied upon and acted properly under the law as it existed. He is now being punished for acting honestly, for justifiably relying on the law, and for not pursuing an action for which there was no "basis in law." Ark. R. Prof'l Conduct 3.1. Under these facts, our precedent and fairness dictate prospective application of *Low*.

An overruling opinion of this court is generally applied retrospectively because it is the current and correct statement of the law;[1] however, there are instances when retrospective application is inapplicable or unjust. This court has "acknowledged the need, when overruling prior case law, to recognize the validity of actions taken in faith upon old decisions while stating the rules to be followed in the future." *Wiles v. Wiles*, 289 Ark. 340, 342, 711 S.W.2d 789, 791 (1986).

Whether an overruling opinion is applied prospectively or retrospectively must be determined on a case-by-case basis. That analysis turns on whether a party justifiably relied on and assumed a now compromised position based on the overruled case while it was the law. Under such circumstances, where "fairness dictates," a decision overruling an earlier case will be prospectively applied. *See United Ins. Co. of Am. v. Murphy*, 331 Ark. 364, 367, 961 S.W.2d 752, 754 (1998). This case-by-case analysis controls regardless of the area of law at issue in the case. *See Wiles, supra*

---

[1] This idea is inaccurately set out as a case "when overruled, stands as though it had never been." *Looney v. Bolt*, 330 Ark. 530, 535, 955 S.W.2d 509, 511 (1997); *see also Flemens v. Harris*, 323 Ark. 421, 915 S.W.2d 685 (1995). Obviously an overruled case does not cease to exist as evidenced by prospective application. *See Wiles v. Wiles*, 289 Ark. 340, 342, 711 S.W.2d 789, 791 (1986). Treating a case as if it has never been is illogical, and this approach has been criticized as fostering a "myth." *See* S. R. Shapiro, Comment Note, *Prospective or Retroactive Operation of Overruling Decision*, 10 A.L.R.3d 1371 § 4, at 1383 (1966).

(divorce case); *Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996) (justifiable reliance in a criminal case); *Hamilton v. State*, 320 Ark. 346, 896 S.W.2d 877 (1995) (same). As the majority notes, the law on prospective application is most abundant in cases concerning loss of contract rights; however, that is because that is the area of law where justifiable reliance on the overruled case often occurs. Nothing limits prospective application to cases concerning contracts. As indicated by Justice Cardozo's discussion in *Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364 (1932), the issue on prospective application is raised in a case where giving retrospective application to a case overruling an earlier case would make "invalid what was valid in the doing." The required analysis is not a search for exceptions to the rule of retrospective application, such as whether a contract was involved, but rather a question of fairness. Under the facts of this case, fairness dictates that *Low* be applied prospectively; therefore, I dissent.

BROWN, J., joins.

ROBERT L. BROWN, Justice, dissenting. The decision today places the plaintiff/appellant (Felton) squarely in a Catch-22 situation caused first by our decision in *Scamardo* in 2004, which reversed over forty years of precedent, and then by our decision in *Low* in 2005, which reversed *Scamardo*. Accordingly, I have sympathy for a party who is caught in this morass created largely by this court and who is trying to discern how best to craft a lawsuit in a jurisprudential landscape of shifting sands. Under these circumstances, I would apply our decision in *Low* prospectively, not only because that is clearly the law in Arkansas, but also because it is manifestly the fair and just thing to do.

The following time line simplifies the history of this case.

• May 9, 2002 — This court handed down *Clayborn v. Bankers Standard Insurance Company*, 348 Ark. 557, 75 S.W.3d 174 (2002), which stated, in *dictum*, that the direct-action statute against a liability carrier did not apply even if the insured was a charitable institution.

• February 26, 2004 — This court handed down *Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004), which held that a plaintiff could sue a charitable organization, which rendered the direct-action statute against liability carriers inapplicable.

• December 17, 2004 — Felton sued Rebsamen Medical Center and Medical Assurance (direct action) for wrongful death.

• January 12, 2005 — Rebsamen affirmatively pled that it was a charitable institution immune from damages beyond its insurance coverage.

• January 13, 2005 — Medical Assurance affirmatively pled that no cause of action existed under *Clayborn* and *Scamardo*.

• February 18, 2005 — The circuit court dismissed Felton's complaint against Medical Assurance without prejudice based on Felton's nonsuit motion.

• December 15, 2005 — This court handed down *Low v. Insurance Company of North America*, 364 Ark. 427, 220 S.W.3d 670 (2005), overruling *Clayborn* and *Scamardo* and holding that charitable institutions are immune from tort liability, which again allowed direct-action suits against liability carriers.

• July 12, 2006 — Felton filed a first-amended complaint reasserting its claims against Medical Assurance in a direct action, citing the *Low* opinion.

• July 25, 2006 — Rebsamen answered and raised charitable immunity as a defense.

• August 1, 2006 — Medical Assurance raised the statute of limitations as a defense against the first-amended complaint.

• March 22, 2007 — The circuit court granted summary judgment in favor of Rebsamen and Medical Assurance.

Felton vigorously asserts that all parties had proceeded in good faith under the law as stated in *Clayborn* and *Scamardo*, beginning with the filing of the complaint in December 2004. When *Low* overruled those decisions on December 15, 2005, and reverted to pre-*Clayborn* and *Scamardo* jurisprudence, it overruled our common-law cases and under Arkansas law should be applied prospectively. Stated differently, Felton contends that because of his reliance on *Scamardo*, *Low* should not be applied retroactively but only prospectively to causes of action arising after the *Low* decision became final. This would allow Felton to proceed solely against Rebsamen under the *Clayborn-Scamardo* cases.

Felton is undeniably correct. The majority opinion states that Rebsamen pled charitable immunity as a defense in its original answer, but that is not entirely correct. It pled immunity "from damages exceeding its insurance policy limits," which alerted Felton that liability coverage would take care of damages up to the policy limits.

The majority states that this court has previously held that *Low* should be applied retroactively. *See Sowders v. St. Joseph's Mercy Health Ctr.*, 368 Ark. 466, 247 S.W.3d 514 (2007). I disagree. In *Sowders*, we held that the "pool" arrangement was not insurance for purposes of the direct-action statute. We then discussed the impact of the *Low* decision and determined that Sowders would not be prejudiced one way or the other whether *Low* was applied retroactively or prospectively. We expressly said: "Sowders's claim against St. Joseph's is no less valuable under the holding in *Low* than it was before *Low*; thus, the application of the rule in *Low* does not result in any unfair prejudice to Sowders." *Sowders*, 368 Ark. at 476, 247 S.W.3d at 521. The issue of applying *Low* retroactively or prospectively has not been decided by this court.

The rule of law concerning prospective application of new case law is plain. *See Aka v. Jefferson Hosp. Ass'n, Inc.*, 344 Ark. 627, 42 S.W.3d 508 (2001); *Parish v. Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968), *superseded by* Act 165 of 1969 (now codified at Ark. Code Ann. § 21-9-301 (Repl. 2004). In *Parish*, we recognized the "possible hardship on those who have justifiably relied upon the law as announced by the court in the past." 244 Ark. at 1253, 429 S.W.2d at 52. We went on to say:

> We declare the rule of liability to be applicable to this case *and all other causes of action arising after this decision becomes final.* This serves, in keeping with our system of the private enforcement of legal rights, to reward the present plaintiff for her industry, expense and effort, and for having given to this Court the opportunity to rid the body of our law of this unjust rule.

*Id.* at 1254, 429 S.W.2d at 52 (emphasis added).

In *Aka v. Jefferson Hospital Association, Inc., supra,* we applied our decision overruling a prior case prospectively and, citing *Parish v. Pitts,* we applied the decision only to the case at bar and "to causes of action arising after the decision becomes final." 344 Ark. at 643, 42 S.W.3d at 519. This court has followed *Parish v. Pitts* in numerous cases since 1968. *See, e.g., Fields v. S. Farm Bureau Cas.*

*Ins. Co.*, 350 Ark. 75, 87 S.W.3d 224 (2002) (change in exception to parental-immunity doctrine applied prospectively); *S. Farm Bureau Life Ins. Co.*, 295 Ark. 250, 748 S.W.2d 332 (1988) (change in misrepresentation defense raised by insurer applied prospectively); *Leffler v. Banks*, 251 Ark. 277, 472 S.W.2d 110 (1971) (reiterated that implied warranty change applied prospectively); *Wawak v. Stewart*, 247 Ark. 1093, 449 S.W.2d 922 (1970) (change in case law regarding implied warranty for sale of house applied prospectively); *see also* S.R. Shapiro, Comment Note, *Prospective or Retroactive Operation of Overruling Decision*, 10 A.L.R.3d 1371 (1966).

The majority misapprehends the rule of law set out in *Parish v. Pitts* and that line of cases. Those cases stand for the proposition that overruling a case will be applied retroactively only for the benefit of the appellant who worked to overturn the erroneous precedent. In our case, that would be the appellant in *Low*. For all other cases, the change in law would apply to causes of action arising after the *Low* decision became final. The *Parish* cases uniformly hold that the application of new case law should be prospective only.

The majority inexplicably concludes that Felton has suffered no prejudice by this court's dual reversal because he had two months after *Low* was handed down to amend his complaint to comply with *Low*. But that rationale only controls if *Low* is not applied prospectively. Again, the *Parish* cases hold that *Low* should be applied prospectively. Felton was entitled to rely on our case law as it stood before the *Low* decision.

The cases relied on by the majority to deny Felton relief are patently inapposite. In all three cases, this court pointed out that the plaintiff could not have justifiably relied on the overruled case. In two cases relied on by the majority, *Looney v. Bolt*, 330 Ark. 530, 955 S.W.2d 509 (1997), and *Baker v. Milam*, 321 Ark. 234, 900 S.W.2d 209 (1995), the lawsuit was filed by the plaintiffs *after* the case that overruled previous precedent had been handed down. That was certainly not the situation in the case before us. Here, Felton filed his complaint *before Low* was handed down. In *Flemens v. Harris*, 323 Ark. 421, 915 S.W.2d 685 (1996), the plaintiff's lawsuit was also filed *after* the case that allegedly had overruled previous precedent. We pointed out that under such circumstances, the plaintiff could not have relied on the previous case law.

Unlike the cases cited by the majority, here Felton justifiably relied on the case law as it existed at the time he filed his complaint, which was *Scamardo*. And that is the touchstone, as S.R. Sapiro's comment in ALR emphasizes:

> Under the classical view that the courts merely discovered and announced existing law, which they had no hand in creating, no issue of restricting the rule of an overruling case to prospective operation could be presented, since the act of overruling was a confession that the earlier rule had been erroneous and should never have been applied at all; but the modern decisions, taking a more pragmatic view of the judicial function, have recognized the power of a court to hold that an overruling decision is operative prospectively only and is not even operative upon the rights of the parties to the overruling case.

> . . . .

> Although the courts have given attention to various factors in determining whether or not to apply an overruling decision retroactively, it appears that the factor of reliance has received the most attention.

Sapiro, *supra* at 1377-79. I would adhere to the modern view as we did in *Parish* and the cases that followed. There can be no doubt that Felton relied on the law in effect when he filed his lawsuit, which, again, was *Scamardo*.

In short, this court demonstrably changed Arkansas's common law in the middle of Felton's litigation. Yet, Felton had a clear right to believe *Low* would be applied prospectively in light of *Parish v. Pitts* and its progeny. Nor do I believe that amending his complaint in July of 2006 to comply with *Low* nullifies Felton's argument that *Low* should be applied prospectively. Under these facts, it is terribly unfair to penalize Felton when this court reversed itself twice within two years on the procedure to be followed and when our case law following *Parish v. Pitts* calls for just the opposite conclusion.

I respectfully dissent.

IMBER, J., joins this dissent.